Mia Solvesson (SBN: 246291)
msolvesson@shb.com
SHOOK, HARDY & BACON L.L.P.
333 Bush Street, Suite 600
San Francisco, California 94104-2828
Telephone: 415.544.1900
Facsimile: 415.391.0281

Attorneys for Defendant
ADT SECURITY SERVICES, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JEWELERS MUTUAL INSURANCE COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>ADT SECURITY SERVICES, INC., a Corporation and DOES 1 through 25, inclusive,<br><br>Defendants. | Case No.: C 08 02035 HRL<br><br>**ADT SECURITY SERVICES, INC.'S MEMORANDUM OF POINTS AND AUTHORITY IN SUPPORT OF ITS MOTION TO DISMISS COMPLAINT**<br><br>Complaint Filed: March 5, 2008 |

## MEMORANDUM OF POINTS AND AUTHORITIES

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant ADT Security Services, Inc. ("ADT") moves this Court to dismiss this case for the failure of Plaintiff Jewelers Mutual Insurance Company to state a claim upon which relief can be granted.

## INTRODUCTION

This subrogation action presents a straightforward contractual risk-allocation issue arising from a burglary that occurred at Plaintiff's insured's jewelry store. Through this Motion, ADT seeks to enforce the agreement between ADT and Plaintiff's insured under which ADT agreed to install the security alarm system and which makes clear that ADT did not assume the risk of loss implicated by this lawsuit.

Policy considerations support strict enforcement of risk-allocation provisions in security alarm services contracts. Courts nationwide have recognized that security alarm services companies are not quasi-general insurers and that mitigating exposure to indeterminate consequential damages is essential to the viability of the security alarm services industry. Because security alarm companies operate in an industry whose business operations perpetually straddle loss events (burglaries, violent crimes, and other unforeseeable events), they are a constant target for parties seeking consequential damages for losses a security alarm services company *did not cause*, such as the burglary in this case. *See Guthrie v. Am. Prot. Indus.*, 160 Cal. App. 3d 951, 954 (1984) (holding that "[c]learly the failure of the alarm system did not *cause* the burglary with its attendant loss"); *Fireman's Fund Ins. Co. v. Morse Signal Devices*, 151 Cal. App. 3d 681, 687 (1984) (holding that while the defendant "may have been negligent in performance of [its] contractual duties, [its] negligence did not create the harm").

Dismissal of Plaintiff's Complaint is appropriate pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff has failed to state a claim upon which relief can be granted because Plaintiff stands in the shoes of its insured and its insured contracted under the agreement with ADT pursuant to the following limitations: (1) any action must have been brought within one year after the accrual of the cause of action; (2) the right of subrogation was waived; and (3) liability for the alleged claims was barred and, alternatively, damages against ADT were limited to $1,000.

1  Moreover, because all duties among the parties are controlled by a contract, Plaintiff may not
2  circumvent the contract by asserting negligence claims. Further, neither Underwriters Laboratories
3  nor California Business and Professions Code sections 7599.50, 7599.55, and 7599.58 provide for a
4  private right of action; therefore, Plaintiff cannot sue under them. In addition, Plaintiff has failed to
5  allege with particularity the details of ADT's alleged fraudulent acts, as required by Federal Rule of
6  Civil Procedure 9(b). Finally, Plaintiff is not entitled to punitive damages in this subrogation action
7  because punitive damages are personal and not assignable under California law.

## STATEMENT OF FACTS

9  According to Plaintiff's Complaint, on or about August 27, 2005, Plaintiff's insured, New
10 Shan Jewelers, was burglarized by unknown suspects who entered 1012 East El Camino Real via the
11 roof and cut through the common wall between 1012 East El Camino Real and 1014 East El Camino
12 Real. (Pl.'s Compl. ¶ 11.) Plaintiff alleges that it paid for property damages and losses in the
13 amount of at least $415,732.05 to or on behalf of its insured. (*Id.* ¶ 17.)

14 Plaintiff's insured and ADT entered into a written contract ("Agreement")[1] whereby ADT
15 agreed to install and provide the supplies and parts for a security alarm system. (Pl.'s Compl. ¶ 38.)
16 The Agreement contains a clause limiting the time to file a lawsuit against ADT to no more than one
17 year after the accrual of the cause of action, a waiver of subrogation, a limitation-of-liability clause,
18 and a limitation-of-damages clause. (Solvesson Decl., Ex. A at ¶¶ B & E.) On the first page of the
19 Agreement, directly above the signature line where Plaintiff's insured signed, it provides:
20 **"ATTENTION IS DIRECTED TO THE WARRANTY, LIMIT OF LIABILITY AND OTHER
21 CONDITIONS ON REVERSE SIDE."** (*Id.*, Ex. A at 1.) The Agreement's reverse side goes on to
22 state in relevant part:

> **THE FOREGOING WARRANTY IS IN LIEU OF ALL OTHER
> WARRANTIES, EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED
> TO, ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS
> FOR A PARTICULAR PURPOSE. THE PURCHASER'S EXCLUSIVE
> REMEDY WITH RESPECT TO ANY AND ALL LOSSES OR DAMAGES**

---
[1] The Agreement is attached as **Exhibit A** to the Declaration of Mia O. Solvesson ("Solvesson Decl.").

2

RESULTING FROM ANY CAUSE WHATSOEVER, INCLUDING ADT'S NEGLIGENCE, SHALL BE REPAIR OR REPLACEMENT AS SPECIFIED ABOVE. ADT SHALL IN NO EVENT BE LIABLE FOR ANY CONSEQUENTIAL OR INCIDENTAL DAMAGES OF ANY NATURE, INCLUDING WITHOUT LIMITATION, DAMAGES FOR PERSONAL INJURY OR DAMAGES TO PROPERTY AND HOWEVER OCCASIONED, WHETHER ALLEGED AS RESULTING FROM BREACH OF WARRANTY OR CONTRACT BY ADT OR NEGLIGENCE OF ADT OR OTHERWISE.

***

IT IS UNDERSTOOD THAT ADT IS NOT AN INSURER, THAT INSURANCE, IF ANY, SHALL BE OBTAINED BY THE CUSTOMER AND THAT THE AMOUNTS PAYABLE TO ADT HEREUNDER ARE BASED UPON THE VALUE OF THE SERVICES AND THE SCOPE OF LIABILITY AS HEREIN SET FORTH AND ARE UNRELATED TO THE VALUE OF THE CUSTOMER'S PROPERTY OR PROPERTY OF OTHERS LOCATED IN CUSTOMER'S PREMISES. CUSTOMER AGREES TO LOOK EXCLUSIVELY TO CUSTOMER'S INSURER TO RECOVER FOR INJURIES OR DAMAGE IN THE EVENT OF ANY LOSS OR INJURY AND RELEASES AND WAIVERS ALL RIGHT OF RECOVERY AGAINST ADT ARISING BY WAY OF SUBROGATION. ADT MAKES NO GUARANTY OR WARRANTY, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS, THAT THE SYSTEM OR SERVICES SUPPLIED, WILL AVERT OR PREVENT OCCURRENCES OR THE CONSEQUENCES THEREFROM, WHICH THE SYSTEM OR SERVICE IS DESIGNED TO DETECT. IT IS IMPRACTICAL AND EXTREMELY DIFFICULT TO FIX THE ACTUAL DAMAGES, IF ANY, WHICH MAY PROXIMATELY RESULT FROM FAILURE ON THE PART OF ADT TO PERFORM ANY OF ITS OBLIGATIONS HEREUNDER. THE CUSTOMER DOES NOT DESIRE THIS CONTRACT TO PROVIDE FOR FULL LIABILITY OF ADT AND AGREES THAT ADT SHALL BE EXEMPT FROM LIABILITY FOR LOSS, DAMAGE OR INJURY DUE DIRECTLY OR INDIRECTLY TO OCCURRENCES, OR CONSEQUENCES THEREFROM, WHICH THE SERVICE OR SYSTEM IS DESIGNED TO DETECT OR AVERT: THAT IF ADT SHOULD BE FOUND LIABLE FOR LOSS, DAMAGE OR INJURY DUE TO A FAILURE OF SERVICE OR EQUIPMENT IN ANY RESPECT, ITS LIABILITY SHALL BE LIMITED TO A SUM EQUAL TO 10% OF THE ANNUAL SERVICE CHARGE OR $1,000, WHICHEVER IS GREATER, AS THE AGREED UPON DAMAGES AND NOT AS A PENALTY, AS THE EXCLUSIVE REMEDY; AND THAT THE PROVISIONS OF THIS PARAGRAPH SHALL APPLY IF LOSS, DAMAGE OR INJURY, IRRESPECTIVE OF CAUSE OR ORIGIN, RESULTS DIRECTLY OR INDIRECTLY TO PERSON OR PROPERTY FROM PERFORMANCE OR NONPERFORMANCE OF OBLIGATIONS IMPOSED BY THIS CONTRACT OR FROM NEGLIGENCE, ACTIVE OR

OTHERWISE, STRICT LIABILITY, VIOLATION OF ANY APPLICABLE CONSUMER PROTECTION LAW OR ANY OTHER ALLEGED FAULT ON THE PART OF ADT, ITS AGENTS OR EMPLOYEES.

\*\*\*

THIS AGREEMENT CONSTITUTES THE ENTIRE AGREEMENT BETWEEN THE CUSTOMER AND ADT.

(Solvesson Decl., Ex. A at ¶¶ B & E.)

## STANDARD

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the complaint. Fed. R. Civ. Proc. 12(b)(6). "A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). A 12(b)(6) dismissal is proper where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

I. **The Agreement between Plaintiff's insured and ADT can be attached to this Motion because it was either incorporated by reference into Plaintiff's Complaint or it can be considered nonetheless because it is central to Plaintiff's claims, and its authenticity cannot be refuted.**

On a 12(b)(6) motion, the court "may consider 'documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading.'" *Lapidus v. Hecht*, 232 F.3d 679, 682 (9th Cir. 2000) (*quoting Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir.1994)). If a plaintiff fails to attach to the complaint the documents on which it is based, the defendant may attach to a Rule 12(b)(6) motion the documents referred to in the complaint to show that they do not support the plaintiff's claim. *Branch*, 14 F.3d at 453-54 *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1125-26 (9th Cir. 2002). Thus, where those documents do not support the plaintiff's claim, the complaint may be dismissed for failure to state a valid claim. *Id.* at 454.

The "incorporation by reference" doctrine allows this Court to look beyond the pleadings without converting the 12(b)(6) motion into a motion for summary judgment. *Knievel v. ESPN*, 393

4

F.3d 1068, 1076-77 (9th Cir. 2005). Where the document attached to a defendant's Rule 12(b)(6) motion is "integral to the plaintiff's claims and its authenticity is not disputed, the plaintiff obviously is on notice of the contents of the document and the need for a chance to refute evidence is greatly diminished." *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998) *superseded by statute on other grounds as recognized in Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 706 n.3 (9th Cir. 2006) (internal quotes omitted).

Further, documents not physically attached to the complaint may nonetheless be considered by this Court on a 12(b)(6) motion to dismiss if: the complaint refers to such document; the document is "central" to the plaintiff's claim; and no party questions the authenticity of the copy attached to the 12(b)(6) motion. *Branch*, 14 F.3d at 454. This prevents the plaintiff from "deliberately omitting references to documents upon which their claims are based." *Parrino*, 146 F.3d at 681; *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 156–57 (2nd Cir. 2006) (allowing extrinsic materials integral to the complaint to be considered "prevents plaintiffs from generating complaints invulnerable to Rule 12(b)(6) simply by clever drafting").

Here, Plaintiff specifically refers to the Agreement as the "written contract" in its Complaint, but Plaintiff failed to attach a copy of the document to its Complaint. (Pl.'s Compl. ¶ 19.) Because the Agreement is essential and integral to Plaintiff's claims, the Court should consider the Agreement in this Rule 12(b)(6) motion.

## ARGUMENT

**I.    Plaintiff's claims are all barred because the Complaint was filed more than one year after the cause of action accrued and after the expiration of the contractual limitation of action period.**

Plaintiff claims that the burglary resulting in Plaintiff's insured's alleged property damage and losses occurred on August 27, 2005—more than two years before the Complaint was filed. (Pl.'s Compl. ¶ 11.) Here, the Agreement entered into between Plaintiff's insured and ADT created a shortened contractual limitation period, as stated in relevant part: **"NO SUIT OR ACTION**

5

SHALL BE BROUGHT AGAINST ADT MORE THAN ONE (1) YEAR AFTER THE ACCRUAL OF THE CAUSE OF ACTION THEREFOR." (Solvesson Decl., Ex. A at ¶ E.)

Under California law, a contractual provision shortening a statute of limitations is valid so long as the shortened period is not so unreasonable as to create an undue advantage. *Capehart v. Heady*, 206 Cal. App. 2d 386 388 (1962). Here, the one-year limitation period was not unreasonable because the alleged injury should have been discovered at the outset.[2] Further, Plaintiff cannot show any evidence that ADT delayed Plaintiff from bringing this suit. *See D.L. Lee & Sons v. ADT Sec. Sys. v. Mid South, Inc.*, 916 F. Supp. 1571, 1578–79 (S.D. Ga. 1995). Therefore, the limitation clause in the Agreement serves to bar all claims brought against ADT.

## II. Plaintiff's insured waived the right to bring a subrogation action like this one.

Because Plaintiff's insured cannot recover against ADT by way of subrogation, neither can Plaintiff. As a subrogee in this case, Plaintiff stands squarely in the shoes of its insured. *See United States v. California*, 507 U.S. 746, 756 (1993); *United States v. Munsey Trust Co.*, 332 U.S. 234, 242 (1947); *Employers Ins. of Wausau v. Granite State Ins. Co.*, 330 F.3d 1214, 1217 (9th Cir. 1993). Standing squarely in those shoes, Plaintiff only has the rights that its insured has; it has no rights independent of or greater than the rights possessed by its insured. *See id.* Plaintiff's insured has unequivocally waived the right to recover against ADT by way of subrogation:

> IT IS UNDERSTOOD THAT ADT IS NOT AN INSURER, THAT INSURANCE, IF ANY, SHALL BE OBTAINED BY THE CUSTOMER AND THAT THE AMOUNTS PAYABLE TO ADT HEREUNDER ARE BASED UPON THE VALUE OF THE SERVICES AND THE SCOPE OF LIABILITY AS HEREIN SET FORTH AND ARE UNRELATED TO THE VALUE OF THE CUSTOMER'S PROPERTY OR PROPERTY OF OTHERS LOCATED IN CUSTOMER'S PREMISES. CUSTOMER AGREES TO LOOK EXCLUSIVELY TO CUSTOMER'S INSURER TO RECOVER FOR INJURIES OR DAMAGE IN THE EVENT OF ANY LOSS OR INJURY AND RELEASES AND WAIVES ALL RIGHT OF RECOVERY AGAINST ADT ARISING BY WAY OF SUBROGATION.

(Solvesson Decl., Ex. A at ¶ E.)

---

[2] Plaintiff's Complaint alleges that burglars cut a hole in the roof (paragraph 11) and that burglars breached one or more safes (paragraphs 13 and 14). Both of those facts should have been and presumably were discovered immediately at the time the store was next reopened.

6

The courts in California have enforced waivers of subrogation like the one in the Agreement. *See, e.g., Davlar Corp. v. Superior Court*, 53 Cal. App. 4th 1121 (1997). In *Davlar*, the court quickly disposed of the plaintiff's attempt to avoid the binding waiver of subrogation clause:

> Davlar contends the subrogation waiver defeats all of McGee's claims against Davlar. We agree. The subrogation waiver is plain and unambiguous, and covers all claims that McAlpine, as McGee's assignor, might otherwise have had against Davlar for breach of contract or negligence.

*Id.* at 1124. The same is true here. Plaintiff's insured is a sophisticated business that entered into the Agreement with ADT whereby the insured agreed to waive all rights to bring a subrogation action against ADT. Because Plaintiff has no more rights than its insured, Plaintiff too has waived the right to bring this action. Plaintiff's Complaint should be dismissed with prejudice.

**III.  Plaintiff's claims for negligence, negligent misrepresentation, and negligence per se are barred by the Risk-Allocation Clause in the Agreement.**

Plaintiff seeks recovery of damages purportedly representing its loss resulting from the burglary that occurred at its premises. The Agreement, however, contains a risk-allocation provision, which provides unequivocally that such consequential damages are not recoverable, whether sought under a breach of contract, warranty, or negligence theory. In particular, paragraph E of the Agreement provides in pertinent part:

> **THE FOREGOING WARRANTY IS IN LIEU OF ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. THE PURCHASER'S EXCLUSIVE REMEDY WITH RESPECT TO ANY AND ALL LOSSES OR DAMAGES RESULTING FROM ANY CAUSE WHATSOEVER, INCLUDING ADT'S NEGLIGENCE, SHALL BE REPAIR OR REPLACEMENT AS SPECIFIED ABOVE. ADT SHALL IN NO EVENT BE LIABLE FOR ANY CONSEQUENTIAL OR INCIDENTAL DAMAGES OF ANY NATURE, INCLUDING WITHOUT LIMITATION, DAMAGES FOR PERSONAL INJURY OR DAMAGES TO PROPERTY AND HOWEVER OCCASIONED, WHETHER ALLEGED AS RESULTING FROM BREACH OF WARRANTY OR CONTRACT BY ADT OR NEGLIGENCE OF ADT OR OTHERWISE.**

\*\*\*

**CUSTOMER AGREES TO LOOK EXCLUSIVELY TO CUSTOMER'S INSURER TO RECOVER FOR INJURIES OR DAMAGE IN THE EVENT OF ANY LOSS OR INJURY AND RELEASES AND WAIVERS ALL RIGHT OF RECOVERY AGAINST ADT ARISING BY WAY OF SUBROGATION. ADT MAKES NO GUARANTY OR WARRANTY, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS, THAT THE SYSTEM OR SERVICES SUPPLIED, WILL AVERT OR PREVENT OCCURRENCES OR THE CONSEQUENCES THEREFROM, WHICH THE SYSTEM OR SERVICE IS DESIGNED TO DETECT. IT IS IMPRACTICAL AND EXTREMELY DIFFICULT TO FIX THE ACTUAL DAMAGES, IF ANY, WHICH MAY PROXIMATELY RESULT FROM FAILURE ON THE PART OF ADT TO PERFORM ANY OF ITS OBLIGATIONS HEREUNDER. THE CUSTOMER DOES NOT DESIRE THIS CONTRACT TO PROVIDE FOR FULL LIABILITY OF ADT AND AGREES THAT ADT SHALL BE EXEMPT FROM LIABILITY FOR LOSS, DAMAGE OR INJURY DUE DIRECTLY OR INDIRECTLY TO OCCURRENCES, OR CONSEQUENCES THEREFROM, WHICH THE SERVICE OR SYSTEM IS DESIGNED TO DETECT OR AVERT**

(Solvesson Decl., Ex. A at ¶ E.)

Policy considerations support strict enforcement of risk-allocation provisions in security alarm services contracts—such as those at issue here. Specifically, courts nationwide have recognized that security alarm services companies do not play the role of insurers and that mitigating the inherent exposure to indeterminate consequential damages is essential to the viability of the security alarm services industry. The freedom to allocate risk is therefore acutely important to the alarm industry.

Mindful of these concerns, courts in California and throughout the nation have consistently acknowledged the need for and validity of risk-allocation provisions in alarm service contracts. The cases to this effect are legion. *See, e.g., Atkinson v. Pac. Fire Extinguisher Co.*, 40 Cal. 2d 192 (1953); *Guthrie*, 160 Cal. App. 3d at 954; *Fireman's Fund Ins. Co.*, 151 Cal. App. 3d 681; *Feary v. Aaron Burglar Alarm, Inc.*, 32 Cal. App. 3d 553 (1973); *Zurich Ins. Co. v. Kings Indus., Inc.*, 255 Cal. App. 2d 919 (1967); *Better Food Mkts. v. Am. Dist. Tel. Co.*, 40 Cal. 2d 179 (1953); *E. H. Ashley & Co. v. Wells Fargo Alarm Servs.*, 907 F.2d 1274, 1278–80 (1st Cir. 1990); *Leon's Bakery, Inc. v. Grinnell Corp.*, 990 F.2d 44, 48–50 (2d Cir. 1993); *Spengler v. ADT Sec. Servs., Inc.*, 505 F.3d 456 (6th Cir. 2007); *D.L. Lee & Sons*, 916 F. Supp. at 1582–83; *Am. Dist. Tel. Co. of Ala. v.*

8

*Roberts & Son, Inc.*, 122 So. 837, 839–40 (Ala. 1929); *Cent. Alarm of Tucson v. Ganem*, 567 P.2d 1203, 1207 (Ariz. Ct. App. 1977); *Niccoli v. Denver Burglar Alarm, Inc.*, 490 P.2d 304, 306 (Colo. Ct. App. 1971); *Bargaintown of D.C., Inc. v. Fed. Eng'g Co.*, 309 A.2d 56, 57 (D.C. 1973); *Cont'l Video Corp. v. Honeywell, Inc.*, 422 So. 2d 35, 37 (Fla. Dist. Ct. App. 1982); *Steiner Corp. v. Am. Dist. Tel.*, 683 P.2d 435, 439 (Idaho 1984); *Gen. Bargain Ctr. v. Am. Alarm Co.*, 430 N.E.2d 407, 410–11 (Ind. Ct. App. 1982); *Corral v. Rollins Protective Servs. Co.*, 732 P.2d 1260, 1263–65 (Kan. 1987); *Alan Abis, Inc. v. Burns Elec. Sec. Servs., Inc.*, 283 So. 2d 822, 825–26 (La. Ct. App. 1973); *New England Watch Corp. v. Honeywell, Inc.*, 416 N.E.2d 1010, 1010–11 (Mass. App. Ct. 1981); *Morgan Co. v. Minn. Mining & Mfg. Co.*, 246 N.W.2d 443, 447 (Minn. 1976); *Shaer Shoe Corp. v. Granite State Alarm, Inc.*, 262 A.2d 285, 286–87 (N.H. 1970); *Eaves Brooks Costume Co. v. Y.B.H. Realty Corp.*, 556 N.E.2d 1093, 1096 (N.Y. 1990); *Reed's Jewelers, Inc. v. ADT Co.*, 260 S.E.2d 107, 109–10 (N.C. Ct. App. 1979); *Fretwell v. Prot. Alarm Co.*, 764 P.2d 149, 151–52 (Okla. 1988); *Wedner v. Fid. Sec. Sys., Inc.*, 307 A.2d 429, 431–33 (Pa. Super. Ct. 1973); *Ostalkiewicz v. Guardian Alarm*, 520 A.2d 563, 565–66 (R.I. 1987); *Houghland v. Sec. Alarms & Servs., Inc.*, 755 S.W.2d 769, 773–74 (Tenn. 1988); *Schepps v. Am. Dist. Tel. Co. of Tex.*, 286 S.W.2d 684, 690–91 (Tex. Civ. App. 1955).

These courts have repeatedly endorsed the allocation of risk in alarm contracts, acknowledging that alarm services are fraught with risk and would otherwise expose such companies to expansive consequential damages. *See Leon's Bakery*, 990 F.2d at 48–49 (cataloging cases to this effect). Security alarm companies are not insurance carriers. Rather, they price their products and services based on the open market, as opposed to some actuarial computation. *Id.*

> Most persons, especially operators of business establishments, carry insurance for loss due to various types of crime. Presumptively insurance companies who issue such policies base their premiums on their assessment of the value of the property and the vulnerability of the premises. No reasonable person could expect that the provider of an alarm service would, for a fee unrelated to the value of the property, undertake to provide an identical type coverage should the alarm fail to prevent a crime.

*Guthrie*, 160 Cal. App. 3d at 954.

Here, no reasonable person could have expected ADT to provide coverage for the property located within the business premises of Plaintiff's insured. ADT's monitoring fees would have remained the same regardless of the value of the contents at Plaintiff's insured's jewelry store. Common sense dictates that the cost to insure the property and contents in a jewelry store was not contemplated or bargained for under the Agreement. The full range of risks confronting a particular ADT client is unknowable to ADT because it is a security alarm company, not an insurer.

Courts across this country have recognized that without the freedom to allocate risk prudently, the alarm-service industry would collapse because the cost of the services would become prohibitive. This well-recognized policy consideration dictates that the Agreement should be enforced in favor of ADT, and Plaintiff's Complaint should be dismissed.

**IV.   Even in the unlikely event that Plaintiff's action is successful, Plaintiff's damages are limited to the amount allowed by the limitation-of-damages clause.**

The risk-allocation clause in the Agreement limits the available damages. Under California law, it is well settled that limitation-of-damages clauses in an alarm service contract are valid and enforceable. *See Better Food Mkts.*, 40 Cal. 2d at 188 (limiting the plaintiff's potential recovery to $50 based on a valid limitation-of-damages clause in the contract between the plaintiff and the defendant burglar alarm installer/maintainer); *Atkinson*, 40 Cal. 2d at 197–98 (holding that $25 constituted a reasonable limitation of damages where a fire alarm failed in a planning mill); *Guthrie*, 160 Cal. App. 3d at 954 (holding that the plaintiff's damages were contractually limited to $250 under a valid limitations-of-damages provision under the contract between the plaintiff and the defendant burglar alarm installer/operator); *Feary*, 32 Cal. App. 3d 553 (holding that the jewelry store plaintiff's recovery was limited to $50 against the defendant burglar alarm installer); *Zurich Ins. Co.*, 255 Cal. App. 2d 919 (limiting the plaintiff's recovery to $50 under the burglar alarm system contract's limitation-of-damages clause).

Here, the Agreement entered into between Plaintiff's insured contains a damage-limitation clause that provides in relevant part:

**IF ADT SHOULD BE FOUND LIABLE FOR LOSS, DAMAGE OR INJURY DUE TO A FAILURE OF SERVICE OR EQUIPMENT IN ANY RESPECT, ITS LIABILITY SHALL BE LIMITED TO A SUM EQUAL TO 10% OF THE ANNUAL SERVICE CHARGE OR $1,000, WHICHEVER IS GREATER, AS THE AGREED UPON DAMAGES AND NOT AS A PENALTY, AS THE EXCLUSIVE REMEDY; AND THAT THE PROVISIONS OF THIS PARAGRAPH SHALL APPLY IF LOSS, DAMAGE OR INJURY, IRRESPECTIVE OF CAUSE OR ORIGIN, RESULTS DIRECTLY OR INDIRECTLY TO PERSON OR PROPERTY FROM PERFORMANCE OR NONPERFORMANCE OF OBLIGATIONS IMPOSED BY THIS CONTRACT OR FROM NEGLIGENCE, ACTIVE OR OTHERWISE, STRICT LIABILITY, VIOLATION OF ANY APPLICABLE CONSUMER PROTECTION LAW OR ANY OTHER ALLEGED FAULT ON THE PART OF ADT, ITS AGENTS OR EMPLOYEES.**

(Solvesson Decl., Ex. A at ¶ E.)

If Plaintiff's exclusive remedy is limited to the amount provided in the limitations-of-damages provision, then Plaintiff fails to state a claim to the extent it seeks damages in excess of that amount. Under Federal Rule of Civil Procedure 12(b)(6), it is proper to dismiss all portions of a complaint that seek damages in excess of the amount provided for in the contractual limitation-of-damages provision between the parties to the lawsuit. *See Children's Surgical Found., Inc. v. Nat'l Data Corp.*, 121 F. Supp. 2d 1221 (N.D. Ill. 2000). Here, Plaintiff claims that it has suffered damages of at least $1.25 million as a result of ADT's negligence and failure to perform its duties under the Agreement. (Pl.'s Compl. ¶¶ 17, 21, 30, 31, 53, 60.) However, under the Agreement's limitation-of-damages provision, the amount of damages Plaintiff may recover is limited to a sum equal to 10% of the annual service charge[3] or $1,000, whichever is greater. In other words, Plaintiff has failed to state a claim to the extent it seeks damages in excess of $1,000. Accordingly, all portions of Plaintiff's Complaint that seek damages above the limitation-of-damages clause should be dismissed under Rule 12(b)(6). *See Children's Surgical Found., Inc.*, 121 F. Supp. 2d at 1224 (granting defendant's motion for partial dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) to the extent it sought to limit plaintiff's damages claim to the amount provided for in the limitation-of-damages provision).

---

[3] The annual service charge is $1,997.00. Solvesson Decl., Ex. A at 1.

11

## V. Plaintiff's "Breach of Underwriters Laboratories Certificate" cause of action fails to state a claim upon which relief can be granted.

In the first of several obvious attempts to plead around the Agreement that is the sole source of any rights, duties, and obligations between the parties, Plaintiff brings its first cause of action under an alleged breach of an Underwriters Laboratories ("UL") certificate. Stated differently, instead of suing under the binding Agreement—Plaintiff only makes one fleeting mention of the Agreement in its 11-page Complaint when it admits in paragraph 19 that ADT and Plaintiff "entered into a written contract"—Plaintiff instead chose to base its first cause of action on the alleged breach of a nonbinding certificate issued by a private company. That certificate obviously does not give rise to some private right of action.

It is reasonable to conclude that Plaintiff is attempting to avoid the Agreement for the simple reason that the Agreement dooms this case. That is, Plaintiff knows that the Agreement bars subrogation actions like this one, time bars this action, and bars or drastically limits recovery in this action through the purposeful allocation of risk. And Plaintiff presumably knows that the California courts, as well as those across the country, have consistently upheld and enforced these contractual provisions. As such, Plaintiff's first cause of action is nothing more than a concerted and creative attempt to plead around the Agreement and avoid the consequences of the very contract its insured voluntarily entered. This tactic only highlights the baseless nature of Plaintiff's claims and supports ADT's contention that the entire Complaint should be dismissed with prejudice.

## VI. Plaintiff's tort claims for negligence, negligent misrepresentation, and negligence per se are barred because the duties allegedly breached were contractual duties, not separate and independent duties.

Plaintiff has asserted three negligence claims. The Agreement, however, controls the relationship between Plaintiff and ADT. For a tort duty to arise out of a contractual relationship there must be a breach of a duty distinct from a breach of contract. *See Better Food Mkts.*, 40 Cal. 2d at 187–88; *see also Fireman's Fund Ins. Co.*, 151 Cal. App. 3d at 687. In *Better Foods Mkts.*, despite the plaintiff's attempts to characterize the action as one in tort, the court concluded that the

12

action was actually in contract:

> [T]he plaintiff makes no claim that a duty was owed to it outside of that created by the contract, and no breach of duty was alleged other than a failure to render the contracted for service. Although an action in tort may sometimes be brought for the negligent breach of a contractual duty, still the nature of the duty owed and the consequences of the breach must be determined by reference to the contract which created that duty.

*Id.* (internal citations omitted).

Other federal courts have addressed this issue and have concluded that the contractual relationship between alarm companies and their subscribers do not give rise to separate tort duties. *Spengler*, 505 F.3d 456; *see also Nahra v. Honeywell, Inc.*, 892 F. Supp. 962 (N.D. Ohio 1995) (holding that alarm contract did not create independent tort duties).

In *Spengler*, the plaintiff filed a wrongful-death action sounding in tort. *Spengler*, 505 F.3d 456. The plaintiff had executed a residential services contract to install and monitor a security system at the home of his mother. *Id.* at 457. The contract at issue there contained nearly identical waiver and risk-allocation language found in the Agreement here.

The alarm system in *Spengler* included a remote control panic button that would sound the alarm and cause an alarm signal to be transmitted to the ADT central monitoring station. *Id.* One night, the decedent activated her portable alarm, transmitting a signal to ADT's central monitoring station. Upon receipt of the signal, ADT dispatched emergency personnel to the wrong address, causing a delay in their arrival at the decedent's address. The plaintiff alleged that the resultant delay caused his mother's death. *Id.* at 458.

The Sixth Circuit Court of Appeals affirmed the district court's grant of summary judgment dismissing the plaintiff's tort claims because the duties at issue arose from the contract. *Id.* The court ruled that the plaintiff's only viable cause of action was breach of contract, subject to the waiver and risk-allocation clauses in the contract. *Id.*

Here, the duties to install and maintain the security system arise solely from the Agreement. Because the common law does not impose any such duties, the duties to install and maintain the security system begin and end with the Agreement. Accordingly, Plaintiff may not sue for

13

1 negligence.

### VII. Plaintiff's Complaint failed to plead fraud with particularity, as required by Federal Rules of Civil Procedure, Rule 9(b).

Plaintiff's fraud claim fails under Rule 9(b), which requires a heightened level of pleading for fraud claims that "[i]n all averments of fraud or mistake, the circumstances constituting the fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). Mere conclusory allegations of fraud are insufficient. *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989).

Rule 9(b) requires a plaintiff to allege: (1) the details of the defendant's allegedly fraudulent acts; (2) when they occurred; and (3) who engaged in them. *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007). A plaintiff alleging fraud must provide an account of the "'time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.'" *Id.* (quoting *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004)). The allegations must be "'specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong.'" *Swartz*, 476 F.3d at 764 (quoting *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)). Dismissals under 9(b) are treated similarly to those under Rule 12(b)(6). *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003).

Here, Plaintiff's Complaint fails to allege with particularity the factual basis of the alleged fraudulent conduct on the part of ADT. Nowhere does Plaintiff's Complaint allege a specific date, time, or name; rather, it merely states that ADT misrepresented to Plaintiff's insured that the two safes were armed and connected pursuant to UL Standards and deceptively did not comply with the requirements mandated by UL Standards and the UL Certificate. Consequently, Plaintiff's fraud claim should be dismissed for failure to plead with particularity.

14

**VIII. Plaintiff is not entitled to sue under California Business and Professions Code sections 7599.50, 7599.55, or 7599.58.**

The violation of California Business and Professions Code section 7599.50, 7599.55, or 7599.58 may merely result in a citation and/or fine to the alarm company operator, qualified manager, or alarm agent. Cal. Bus. & Prof. Code § 7591.9. Because the legislature expressed no intent for a private right of action—directly or impliedly—under California Business and Professions Code sections 7599.50, 7599.55, or 7599.58, there is no private right of action. *See Moradi-Shalal v. Fireman's Fund Ins. Cos.*, 46 Cal. 3d 287, 305 (1988); *Animal Legal Defense Fund v. Mendes*, 160 Cal. App. 4th 136, 142 (2008). Therefore, the Business and Professions Code section claim is invalid and fails to state a cause of action upon which relief can be granted. Thus, it should be dismissed.

**IX. Plaintiff is not entitled to punitive damages because they are not assignable.**

The right to punitive damages is personal and not assignable under California law. *Murphy v. Allstate Ins. Co.*, 17 Cal. 3d 937, 942 (1976). Thus, because this is a subrogation action, Plaintiff cannot recover punitive damages, as it requests in its Prayer. Therefore, that portion of the Complaint is invalid and should be dismissed.

## CONCLUSION

Plaintiff's Complaint, and each cause of action alleged therein, should be dismissed for failure to state a claim upon which relief can be granted. The action is time-barred. Plaintiff's insured waived the right to bring a subrogation action like this one. The Agreement that exclusively governs the relationship between the parties bars or limits the claims to $1,000. The breach of UL certificate claim is simply baseless. There is no independent basis to support Plaintiff's tort claims. The fraud claims are not pled with specificity. And the California Business and Professions Code sections do not provide a private right of action. For these reasons and those set forth more

//
//
//

15

specifically above, ADT respectfully requests that the Court grant this Motion, dismiss Plaintiff's Complaint in its entirety with prejudice, and enter such further relief as the Court deems just and reasonable.

Dated: April 25, 2008

Respectfully submitted,

SHOOK, HARDY & BACON L.L.P.

By: /s/ Mia O. Solvesson
MIA O. SOLVESSON
Attorneys for Defendant
ADT SECURITY SERVICES, INC.